FILED

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

2016 AUG 12 P 2: 10

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| **ISLAM E. SALMAN,**<br>1111 Pomelo Court<br>Catonsville, MD 21228<br>    Plaintiff,<br><br>v.<br><br>**Saudi Arabian Cultural Mission,**<br>8500 Hilltop Road Suite 325<br>Fairfax, VA 22031<br><br>    Defendant. | Civil Action No.: 1:16CV1033 JCC/IDD<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

The Plaintiff, Islam Salman, moves the Court for entry of judgment in his favor against the Saudi Arabian Cultural Mission ("Defendant") and in support of such complaint avers as follows:

### NATURE OF ACTION AND JURISDICTION

1. This is a civil action under 42 U.S.C. § 2000e seeking damages against Defendant for retaliating against Plaintiff for pursuing his right to present allegations of sexual harassment against a fellow employee of Defendant. In addition, Plaintiff seeks damages and other relief for overtime worked pursuant the Fair Labor Standards Act (FLSA) 29 U.S.C. § 201 et seq.

2. This case arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq and the Fair Labor Standards Act, 29 U.S.C. §201, et seq. Because Defendant is not entitled to immunity pursuant to 28 U.S.C. §§ 1605(a)(1) and (a)(2), this Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1330.

3. Plaintiff brings this action for damages resulting from his unlawful termination on or about June 16, 2015. Plaintiff was wrongfully discharged from his position as a Coordinator of Student Social Affairs in violation of his rights under 42 U.S.C. § 2000e et seq.

4. Plaintiff also brings this action for damages resulting from Defendant's failure to pay overtime wages as required by the FLSA, 29 U.S.C. § 201 et seq. On several occasions, Plaintiff worked in excess of forty hours in a week, but was either paid at his regular rate or not paid for the overtime at all.

5. This Court is an appropriate venue for this cause of action pursuant to 28 U.S.C. 1391(b)(1) and (b)(2). The actions complained of took place in this judicial district; Plaintiff would be employed in this judicial district but for the unlawful actions and practices of the Defendants; and Defendant is present and regularly conducts affairs in this judicial district.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

6. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

7. Plaintiff has satisfied the procedural and administrative requirements for proceeding under Title VII as follows:

a. On November 3, 2015, Plaintiff filed a formal charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC"). See **Exhibit 1.**

b. On May 17, 2016, after investigation of Mr. Salman's charge of discrimination, the EEOC issued a Notice of Right to Sue Letter. See **Exhibit 2.**

c. The instant action is timely because it is initiated within ninety (90) days of the receipt of the aforementioned Notice of Right to Sue.

## PARTIES

8. Plaintiff, Islam Salman ("Salman" or "Plaintiff") is a former Coordinator of Student Social Affairs at the Saudi Arabian Cultural Mission. He currently resides in Catonsville, Maryland.

9. Defendant, the Saudi Arabian Cultural Mission ("SACM" or "Defendant")) is an organization created by the Saudi government in 1951 to administer programs and policies to meet the educational and cultural needs of Saudis studying in the United States. SACM is subject to suit and the jurisdiction of this Court pursuant to 28 U.S.C. § 1330.

## FACTS

10. Plaintiff, Islam Salman, was employed by Defendant, SACM, commencing on or about July 13, 2011 until his termination on June 16, 2015.

11. Plaintiff was employed as an Academic Advisor.

12. Plaintiff's role as an Academic Advisor included but was not limited to with assessing students' needs, goals, interests and prior academic experiences in order to guide students in the design and implementation of a successful academic plan. See **Exhibit 3-4.**

13. Plaintiff was subjected to ongoing sexual harassment and inappropriate and unwelcome sexual advances by his co-worker, Ms. Luma Hawamdah.

14. Ms. Hawamdah's sexual harassment of Plaintiff included: ongoing unwelcome touching, sexually explicit comments, requests to become intimate with Plaintiff, and requests to hug and kiss Plaintiff.

15. Plaintiff always rejected Ms. Hawamdah's inappropriate advances and on multiple occasions, Plaintiff asked Ms. Hawandah to stop harassing him.

16. In response to Plaintiff's rejection of her advances and his ongoing requests to stop, Ms. Hawamdah became verbally abusive and hostile towards him.

17. As a result of this verbally abusive and hostile behavior, Plaintiff requested that his directors move him to another office.

18. Plaintiff's request to move to another office was granted but the harassing behavior continued.

19. As a result of this continuing and ongoing unwelcomed and inappropriate behavior, on May 15, 2015, Plaintiff sent a letter to Dr. Mohammed Saleh Amaifi. See **Exhibit 5.**

20. In his May 15, 2015 communication, Plaintiff expressed the multiple instances of harassment that he was experiencing at the workplace and provided examples to support his allegations. Plaintiff sent his complaint in the manner required by Section 1.5 of SACM's Personnel Guidelines. See **Exhibit 5.**

21. On or about May 29, 2015 SACM held a meeting with Mr. Salman and Ms. Hawamdah.

22. At this meeting, Mr. Salman provided SACM with details underlying his allegations against Ms. Hawamdah.

23. Plaintiff's expressed the basis for his allegations and provided multiple examples of the harassing and inappropriate behavior.

24. In response to Plaintiff's allegations, SACM threatened disciplinary action if Mr. Salman did not sign a letter stating that his issues with Ms. Hawamdah were personal and that the matter was settled.

25. Also, during this meeting Plaintiff was told that if he pursued the sexual harassment allegations he would be terminated without warning.

26. Plaintiff was told by Dr. Alassaf that Ms. Hawamdah would not 'hurt' him again if he closed his case.

27. Despite Plaintiff's beliefs that his actions were valid and based on the ongoing harassment he was experiencing, SACM coerced and threatened Mr. Salman with disciplinary action if he did not sign this letter.

28. Thus, subsequent to the meeting, on May 29, 2015, Mr. Salman provided a letter to SACM stating that the "case was settled." See **Exhibit 6.**

29. On or about June 4, 2015, Mr. Salman received a communication from Mr. Mohammed ben Salh Alrobayan stating:

> "As indicated to the committee of Investigation and Equality . . . regarding the complaint that was filed from you against the Academic Advisor Luma Hawamdah, the committee decided to draw your attention to the matter that you wasted the company's time on unimportant issues; and wasted the responsible employees' valuable effort by continue working on your case for several days with a personal issue between you and her. Therefore, please do not repeat that again and if that happen again, the rules in the contract will be applied on you." See **Exhibit 7.**

30. On or about June 8, 2015, Mr. Salman wrote a letter to SACM reiterating the significance of the sexual harassment allegations and stating that he wanted to clarify that raising the issue of the sexual harassment that he was experiencing was not a mistake. Mr. Salman requested to reopen the matter. See **Exhibit 8.**

31. Only a few hours later, in response to Mr. Salman's June 8, 2015 communication, at approximately 4:47 p.m., SACM had security personnel show up at Mr. Salman's workspace to demand that he clear his workspace, provide them with his access key and parking pass and then proceeded to escort him out of the office.

32. On June 12, 2015, a follow up meeting was held between SACM and Mr. Salman. During the June 12, 2015 meeting, Mr. Salman was threatened and told that if he insisted on proceeding with his Complaint against Ms. Hawamdah he would face consequences.

33. After this meeting, since Mr. Salman felt that he had substantial support for his harassment claims he proceeded to seek counsel to protect his legal rights.

34. SACM retaliated against Mr. Salman, in violation of Section 1.5(D)(3) of its policies, by terminating his employment on or about June 16, 2015.

35. Throughout Mr. Salman's employment there were several occasions where his weekly time exceeded forty (40) hours.

36. Further, for the weeks that Mr. Salman worked in excess of forty (40) hours, we was compensated straight time and not time and a half.

37. Shortly after Plaintiff was terminated, he applied for unemployment benefits with the employment commission.

38. The employment commission requested that Plaintiff provide documentation showing proof of income.

39. In response to this request, Plaintiff reached out to SACM and requested a letter demonstrating proof of income for unemployment insurance purposes.

40. SACM received this request and the manager of administrative affairs, Mr. Mohammed Ben Salh Alrobayan told Plaintiff that he would not provide him with such documentation unless Plaintiff signed a resignation letter.

41. Since Mr. Ben Salh Alrobayan would not grant Plaintiff's request, Plaintiff went to his former manager Mr. Alsobail. Mr. Alsobail refused to provide this documentation.

42. Then, Plaintiff went to the attaché's office at SACM and the response he was given was that he must resign in order to receive such documentation.

43. SACM has refused to provide Plaintiff with documentation needed to obtain unemployment benefits. This is clear further proof of their retaliation.

## Implicit Waiver of Immunity

44. In the offer letter to Mr. Salman dated July 13, 2011, ("Offer Letter"), required Mr. Salman to submit a Federal form I-9, Employment Eligibility Verification. See **Exhibit 4.**

45. The Offer Letter also stated:

> The Saudi Arabian Cultural Mission prohibits discrimination and harassment on the basis of any classification protected by Federal, State, or local law . . . .

46. The Offer Letter also indicated that qualifying employees of SACM were entitled to certain benefits under the Family Medical Leave Act (FMLA). See **Exhibit 4.**

47. The commitment to prohibit discrimination is also outlined in the Saudi Arabian Cultural Mission Personnel Guidelines (Employee Handbook) Dated May 2011. See **Exhibit 9.**

48. Section 1.4 of the Employee Handbook prohibits sexual and other unlawful harassment. This commitment applies to "any basis prohibited by federal, state or local law," as well as any "conduct that might be construed as sexual harassment (all as defined and protected by applicable law)." See **Exhibit 9.**

49. Section 1.4 of the Employee Handbook, its Offer Letter, and Employment Application clearly evidence SACM's acknowledgement that it voluntarily subjected itself to federal law regarding non-discrimination and harassment.

50. Section 1.5(D) of the Employee Handbook outlines the complaint procedure for reporting complaints of sexual or other harassment. See **Exhibit 9.**

51. Mr. Salman complied with the complaint procedure when he reported his complaint against Luma Hawamdah.

52. Section 1.5(D) 3 (it is assumed that this section is numbered incorrectly and should actually be 1.4(D) 3) of the Employee Handbook prohibits retaliation against an employee who makes a complaint or assists in the investigation of a complaint. See **Exhibit 9.**

53. Section 1.5 of the Employee Handbook indicates that SACM is voluntarily subjecting itself to the Americans with Disabilities Act (ADA) by providing barrier free workplaces. See **Exhibit 9**.

54. Section 3.5 of the Employee Handbook evinces SACM's intent to comply with the provisions of the Family Medical Leave Act (FMLA). See **Exhibit 9.**

55. Section 4.4 evinces SACM's intent to comply with the pay provisions of the Fair Labor Standards Act (FLSA).

56. The signature page of the Employee Handbook requires all employees to acknowledge that they have reviewed and understand the policies mentioned above. See **Exhibit 9.**

57. 28 U.S.C. §1605(a)(1) provides that a foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case— "in which the foreign state has waived its immunity either explicitly or by implication . . . ."

58. SACM's documented voluntary compliance with federal statutes on harassment and discrimination constitutes an implicit waiver of immunity that was never withdrawn by SACM.

### Commercial Activity

59. 28 U.S.C. §1605(a)(2) provides that a foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case— "in which the action is based on a commercial activity carried on in the United States by the foreign state . . . ."

60. During the course of his employment with SACM, Mr. Salman functioned as an academic advisor.

61. Mr. Salman's activities as an academic advisor were activities that are routinely engaged in by private commercial entities.

62. During the course of his employment, Mr. Salman did not engage in any policy-making activity.

63. During the course of his employment, Mr. Salman did not engage in any legislative activity.

64. During the course of his employment, Mr. Salman did not exercise any diplomatic function nor was he authorized to speak for the government of Saudi Arabia.

65. At no time, during the course of his employment, did Mr. Salman exercise any governmental or consular functions.

66. Mr. Salman's activities were of the sort engaged in by numerous private entities and are purely commercial for purposes of determining immunity under the Foreign Services Immunities Act.

67. SACM provides academic and financial support to students in the United States.

68. The academic and financial support that SACM provides to students is the type of activity that is provided by numerous commercial academic service providers throughout the nation.

66. SACM engages in commercial activity, purchasing educational services from United States colleges and Universities through its financial support to students.

69. SACM's engagement in the aforementioned commercial activity with United States colleges and universities has substantial contact with the United States.

70. SACM's commercial activity is of the type that falls under the exception to foreign immunity in 28 U.S.C. §1605(a)(2) Therefore, SACM is not entitled to immunity in actions related to this commercial activity.

## CAUSES OF ACTION

### COUNT I: Protected Activity Pursuant to 42 U.S.C. § 2000e

**Retaliation for Pursuing a Claim Alleging Sexual Harassment**

71. The foregoing allegations are incorporated as if re-alleged herein.

72. Mr. Salman exercised his statutory right to complain about the acts of Luma Hawamdah, which he perceived to be sexual harassment.

73. Mr. Salman followed SACM's reporting procedures as outlined in the SACM Employee Handbook with the expectation that his actions would be protected from retaliation as per the handbook and applicable law.

74. Defendant's actions subsequent to Salman's complaint include reprimand and retaliation (and, ultimately, employment termination) and therefore deprived Mr. Salman of his statutory rights to make a complaint without fear of reprisal.

75. As a direct result of the actions of the Defendant, Mr. Salman has suffered an unlawful deprivation of his rights under 42 U.S.C. §2000e et seq.

76. Defendants acted intentionally and with callous disregard for Mr. Salman's known statutory rights.

77. As a direct and proximate result of the Defendant's violations of Mr. Salman's rights, Salman has suffered financial damages, humiliation, depression, embarrassment, mental and emotional anguish, distress, physical illness - including weight loss, hair loss and loss of appetite, loss of income, damage to reputation, violation of his right to pursue a complaint of sexual

harassment free from retaliation as protected by statute, and other compensable damages in an amount to be determined by the Court.

### COUNT II: Fair Labor Standards Act (FLSA) Violation - Pursuant to 29 U.S.C. § 201 et seq.

### Failure to pay overtime as required by the FLSA in 29 U.S.C. § 207

78. The foregoing allegations are incorporated as if re-alleged herein.

79. In the employment contract offer between SACM and Islam Salman dated July 13, 2011, Mr. Salman's employment status was defined as non-exempt.

80. In the foregoing contract offer, SACM explicitly stated that Mr. Salman was entitled to overtime pay for hours actually worked in excess of forty (40) in a given workweek.

81. In May of 2015, Mr. Salman worked fifteen hours of overtime for a graduation event (Graduation Event), but was paid at the regular rate instead of the overtime rate.

82. Upon knowledge and belief, Mr. Salman worked overtime on numerous additional occasions and was either not compensated or compensated at his regular rate for the hours worked in excess of forty in a given workweek.

83. SACM's payroll checks do not provide information on number of hours that employee worked but simply shows the employee's total pay.

84. SACM knew or should have known that Mr. Salman worked in excess of forty hours on these occasions at their instruction and direction and that he was entitled to compensation for those hours.

85. Mr. Salman is entitled to overtime pay for the work performed during the Graduation Event and other occurrences.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Islam Salman, requests judgment against Defendants as follows:

1. For damages in equity pursuant to Title VII regarding the unlawful acts and practices of Defendants:

   A. Back pay;
   B. Front pay;
   C. Monetary damages;
   D. Compensatory damages;
   E. Punitive damages;
   F. An Award of Plaintiff's reasonable attorney's fees, costs and expenses, to be paid by Defendant; and,
   G. Grant such other relief as may be just and proper.

2. For damages in equity pursuant to FLSA regarding the unlawful acts and practices of Defendants:

   A. Judgment against Defendant in the amount of the Named Plaintiff's unpaid back wages at the applicable rate;
   B. Judgment against Defendant in the amount of the Named Plaintiff's unpaid overtime wages at the applicable rate;
   C. An award of all damages, including damages for liquidated damages, pre-judgment interest and/or post-judgment interest;
   D. An Award of Plaintiff's reasonable attorney's fees, costs and expenses, to be paid by Defendant; and,
   E. For such other and further relief to which Plaintiff may show himself justly entitled and the Court equitably awards.

Dated: August 12, 2016

Respectfully Submitted,

*Andrew Baxter*

J. Andrew Baxter (VSB#78275)
Merritt J. Green (VSB#
Attorney for Plaintiff
General Counsel, P.C.
6849 Old Dominion Drive, Suite 220
McLean, Virginia 22101
Tel: 703-556-0411
Fax: 1-888-222-6807
abaxter@gcpc.com

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 12, 2016

*/s/ Andrew Baxter*

J. Andrew Baxter (VSB#78275)
General Counsel, P.C.
6849 Old Dominion Drive, Suite 220
McLean, Virginia 22101
Tel: 703-556-0411
Fax: 1-888-222-6807
abaxter@gcpc.com
Attorney for Plaintiff